Electronically FILED by
Superior Court of California;
County of Los Angeles
9/05/2023 6:00 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By C. Coleman, Deputy Clerk

Marc S. Williams (Bar No. 198913)
Email: mwilliams@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5160
Facsimile: (213) 232-5167

Attorneys for Plaintiffs Leon Chen and Sarah Chen

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, WEST JUDICIAL DISTRICT**

| | |
|---|---|
| LEON CHEN, an individual; and SARAH CHEN, an individual,<br><br>             Plaintiffs,<br><br>     v.<br><br>MARC FINEMAN, an individual; MARC FINEMAN, a co-trustee of FINEMAN FAMILY TRUST; AVITAL FINEMAN, an individual; AVITAL FINEMAN, a co-trustee of FINEMAN FAMILY TRUST; and DOES 1-50,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. NEGLIGENCE PER SE**<br>**2. NEGLIGENCE**<br>**3. PRIVATE NUISANCE**<br>**4. PUBLIC NUISANCE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Leon Chen and Sarah Chen (collectively, the "Chens" or "Plaintiffs") hereby allege:

**<u>INTRODUCTION</u>**

1.      Leon and Sarah Chen achieved what many people in this world want.  They got married.  They started a family.  And they bought a home in a quiet residential area in the City of Los Angeles near Beverly Hills, California.  They have two children: one was 4-years old at the time of the horrific events that give rise to this case; the other was 4-months old.

2.      On January 28, 2023, in the middle of the night, around 2:30 a.m., the Chens were awoken by gunshots, screams of terror, shouting, and knocks at their door by fleeing victims.  Bullets sprayed across the Chens' property, including one that flew through their front window, merely feet away from their 4-year-old's bedroom, which hit one of the Chens' bedroom walls.

3.      Three people were killed that night from gunshot wounds.  The three had rented the house next door to the Chens for the weekend.

4.      The shooting, murders, and bedlam on January 28, 2023, were the culmination of a year-long series of disturbances in the neighborhood, all emanating from the house next door to the Chens.  At the time of the shooting on January 28, that house – the "***Fineman Property***" – was owned by Defendants Marc and Avital Fineman, either individually or through the Fineman Family Trust of which they are the two co-trustees (collectively, the "Finemans").

5.      The Finemans had moved out of the Fineman Property approximately one year before the shootings and murders on January 28, 2023, and elected to list the house for short-term rentals.  To do so, on information and belief, the Finemans engaged the services of a third-party agent to manage the short-term rentals ("DOE 1").  What ensued was a stream of short-term renters moving in and out of the Fineman Property, loud parties, drug use, traffic, and other disturbances about which the Chens and their neighbors complained to the Finemans on multiple occasions.  The disturbances did not stop and culminated in the horror that occurred on January 28, 2023.  This kind of party-house use of the Fineman Property is not what the Chens expected when they bought their dream home, and it is not what the City of Los Angeles allows under the Ordinance governing short-term rentals.

6.      As a result of Defendants' violations of law, their negligence, and the nuisance they created, the Chens have suffered damages in the form of property damage, costs of installing security

measures, loss in value of their home, medical expenses, and emotional distress.  They seek

compensation from the defendants in this action for all of those damages.

## PARTIES

7.     Plaintiff Leon Chen is an individual residing in Los Angeles, California, and is the co-owner of the house next door to the Fineman Property.

8.     Plaintiff Sarah Chen is an individual residing in Los Angeles, California; she is married to Leon Chen and is the other co-owner of the house next door to the Fineman Property.

9.     Defendant Marc Fineman is an individual residing, on information and belief, in Miami, Florida.  Mr. Fineman was the co-owner or the Fineman Property at all times relevant to this action.  On information and belief, Mr. Fineman owned the Fineman Property either individually or through the Fineman Family Trust of which he is one of two co-trustees.  Mr. Fineman is sued individually and as trustee of the Fineman Family Trust.

10.     Defendant Avital Fineman is an individual residing, on information and belief, in Miami, Florida.  On information and belief, Mrs. Fineman is married to Mr. Fineman and was the other co-owner or the Fineman Property at all times relevant to this action.  On information and belief, Mrs. Fineman owned the Fineman Property either individually or through the Fineman Family Trust of which she is the other co-trustee.  Mrs. Fineman is sued individually and as trustee of the Fineman Family Trust.

11.     The true name and capacity, whether individual, corporate, or otherwise, of the defendant named as DOE 1 is unknown to Plaintiffs, who therefore sue DOE 1 by such fictitious name pursuant to California Code of Civil Procedure Section 474.  Plaintiffs will amend this Complaint to set forth the true name and capacity of DOE 1 when they are ascertained.  On information and belief, DOE 1 was acting as an agent of the Finemans at all times relevant to this action.  On information and belief, the Finemans retained DOE 1 to manage short-term rentals of the Fineman Property on their behalf.

12.     The true names and capacities, whether individual, corporate, or otherwise, of defendants named as DOES 2 through 50, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names pursuant to California Code of Civil Procedure Section 474.  Plaintiffs will amend this Complaint to set forth the true names and capacities of DOES 2 through 50 when they are

ascertained.  Plaintiffs are informed and believe, and on that basis allege, that each of these defendants participated in all or some of the acts as alleged herein and are liable to Plaintiffs.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the Finemans and DOE 1 because the Fineman Property, where the incident arose, is located in the Beverly Hills area of Los Angeles County, California.

14.     Venue is proper in this judicial district pursuant to California Code of Civil Procedure Section 395(a), because the Fineman Property, where the incident arose, is located in in the Beverly Hills area of Los Angeles County, California.

## GENERAL ALLEGATIONS

15.     In the early morning on January 28, 2023, a mass shooting took place at a gathering among the short-term rental tenants at the Fineman Property.  Three individuals were brutally murdered and others were injured.  Needless to say, the mass shooting and murders were and continue to be a highly traumatic and damaging event for Mr. and Mrs. Chen and their two young children, all of whom were in their home next door to the Fineman Property during the incident.  Not only was the Chen family awoken by the shocking sound of gunfire, the horrifying sound of victims screaming, and desperate knocks and pounding at their door by people fleeing the scene, but bullets hit their home, including one that was shot through their front window merely feet away from the bedroom of their 4-year-old son.  Blood was splattered on and around the Chens' property.  The kids saw blood and body parts and shot-up property.  And in the 18 hours or so after the shooting, the Chens' home was a crime scene with police officers, detectives, a forensics team, and reporters on or around their property.

16.     The January 28 incident at the Fineman Property was not the first shooting in the area at a short-term rental property.  Prior to the shooting at the Fineman Property, on information and belief, there had been at least two other recent shootings at short-term rental properties in the area.  Nor was the shooting on January 28 the first disturbance emanating from short-term tenants occupying the Fineman Property.  There had been multiple instances in which short-term tenants of the Fineman Property had engaged in drug use, loud music, revving of car engines, yelling, profanities, and other conduct unfit for the neighborhood.  Prior to the January 28 incident, the Finemans had received multiple complaints

1   about such instances from neighbors, and the police had visited the property on at least one occasion to

2   investigate such disturbances.

### DEFENDANTS' VIOLATION OF THE HOME-SHARING ORDINANCE

4       17.     At the time of the shooting, the Finemans, aided by DOE 1, had been leasing the Fineman

5   Property for short-term rentals in violation of Los Angeles County's Home-Sharing Ordinance

6   (Ordinance No. 185931).

7       18.     The Home-Sharing Ordinance includes a provision entitled, "Prohibitions."  *See* Los

8   Angeles Municipal Code (LAMC) § 12.22A32(d).  Under that heading, Subsection 1 states: "No Person

9   shall offer, advertise, book, facilitate or engage in Home Sharing or Short-Term Rental activity in a

10  manner that does not comply with this subdivision."  LAMC § 12.22A32(d)(1).[1]  Under Subsection 2 of

11  the Prohibitions heading, the Ordinance states: "A Host may not participate in Home-Sharing unless all

12  advertisements clearly list the City-issued Home Sharing registration number or pending registration

13  status number."  LAMC § 12.22A32(d)(2).  The Finemans and DOE 1 were in violation of both

14  Subsections 1 and 2 of Section 12.22A32(d) at the time of the incident on January 28, 2023.

**A.     Defendants' Violation of Subsection 1 of the Prohibitions**

16      19.     Both the Finemans and DOE 1"offer[ed], advertise[d], book[ed], facilitate[d] or

17  engage[d] in . . . Short-Term Rental activity in a manner that does not comply with" the Ordinance in

18  violation of LAMC Section 12.22A32(d)(1).

19      20.     First, the Finemans and DOE 1 are within the class of people covered by the prohibition

20  set forth in Section 12.22A32(d)(1).  That section applies broadly to a "Person" who offers, advertises,

21  books, facilitates or engages in Short-Term Rental activity.  Under the Ordinance, "Person" has "the

22  same meaning as that term is defined in Section 21.7.2" of the LAMC.  Section 21.7.2 states: "'Person'

23  means any individual, firm, partnership, joint venture, association, social club, fraternal organization,

24  joint stock company, corporation, estate, trust, business trust, receiver, trustee, syndicate or any other

---

[1] Short-Term Rental is defined in the Ordinance as follows: "A Rental Unit, rented in whole or in part, to any Person(s) for transient use of 30 consecutive days or less.  Rental Units within City-approved Hotels, motels, Transient Occupancy Residential Structures and Bed and Breakfasts shall not be considered a Short-Term Rental."

COHEN WILLIAMS LLP

COHEN WILLIAMS LLP

group or combination acting as a unit."  Thus, each of the Finemans (whether individually or as trustees of the Fineman Family Trust) and DOE 1 (whether an entity or individual) are "Persons" within the meaning of the prohibition expressed under Section 12.22A32(d)(1).  So long as the Finemans and DOE 1 offered, advertised, booked, facilitated or engaged in Short-Term Rental activity in a manner that does not comply with the Ordinance, they are in violation of the law.

21.     Second, the Finemans and DOE 1 did "offer, advertise, book, facilitate or engage in Short-Term Rental activity."  Indeed, the Finemans not only knew that their home was being offered, advertised, and booked for Short-Term Rentals, but, on information and belief, they entered into an agreement with DOE 1 for the specific purpose of having DOE 1 offer, advertise, book, facilitate or engage in Short-Term Rentals.  Moreover, the Home-Sharing Administrative Guidelines issued by the Department of City Planning make clear that property owners, like the Finemans, are responsible for any violation of the Prohibitions in the Ordinance: "Hosts and/or property owners are responsible for violation of any of the Prohibitions section in the Ordinance as described in Section V above."  *See* Guidelines, Section VI.[2]

22.     Third, the Finemans' and DOE 1's Short-Term Rental activity was done "in a manner that does not comply with" the Home-Sharing Ordinance.

23.     The Home-Sharing Ordinance permits Short-Term Rentals only of a "Primary Residence," which is defined in the Ordinance as: "The sole residence from which the Host conducts Home-Sharing and in which the Host resides for more than 6 months of the calendar year."  The Fineman Property was not anyone's "sole residence" and nobody had been residing in that residence "for more than 6 months of the calendar year" at the time of the mass shooting and murders on January 28, 2023.  Indeed, a Senior Lead Officer for the Los Angeles Police Department informed the Chens that the short-term rental of the Fineman Property had been deemed illegal due to the home owner not living on the property.  In addition, the Short-Term Rental activity was done "in a manner that does not comply with" the Home-Sharing Ordinance for another reason – nobody registered for Home-Sharing of the

---

[2] Section V of the Home-Sharing Administrative Guidelines sets forth the Prohibitions under LAMC § 12.22A32(d).

Fineman Property by filing an application with the Department of City Planning, as required under the Ordinance.

**B.     Defendants' Violation of Subsection 2 of the Prohibitions**

24.     The Finemans and DOE 1 also violated LAMC Section 12.22A32(d)(2), which states: "A Host may not participate in Home-Sharing unless all advertisements clearly list the City-issued Home Sharing registration number or pending registration status number."  The Finemans and DOE 1 participated in Home-Sharing.  Nobody registered the Fineman Property for Home-Sharing with the Department of City Planning.  And advertisements for short-term renting of the Fineman Property did not list a City-issued Home-Sharing registration number or pending registration status number, given that no application for registration was ever made.  Indeed, as discussed below, the City of Los Angeles cited the Finemans for 10 separate violations of Section 12.22A32(d)(2) – citations that the Finemans have paid and not contested.

**C.     The City's Warning of the Finemans' Violations of the Home-Sharing Ordinance**

25.     The Finemans' violations of the Home-Sharing Ordinance are particularly egregious because they were put on notice of their violations months before the incident on January 28, 2023.  On September 6, 2022, the Home-Sharing Unit of the Department of City Planning sent the Finemans a Notice of Code Violation of Home-Sharing Ordinance (the "First Warning Letter").  The First Warning Letter was specifically addressed to: "FINEMAN, MARC L AND AVITAL TRS, FINEMAN FAMILY TRUST."

26.     The First Warning Letter informed the Finemans that the Home-Sharing Ordinance became effective on July 1, 2019, and that the Ordinance requires hosts who wish to engage in short-term rental activity to register with the City of Los Angeles, obtain a registration number, and post that number on all advertisements.  The First Warning Letter further notified the Finemans that, "as the identified owner or tenant of the above-referenced property, you may be in violation of the Home-Sharing Ordinance (Section 12.22.A.32(1)) of the Los Angeles Municipal Code (LAMC))."  Specifically, the First Warning Letter informed the Finemans that their property had "been identified as Short-Term Rental through advertised listings found on one or more websites that advertise short-term rentals."  The First Warning Letter further stated: "It is illegal to rent property in the City on a short-term

1  term basis (30 or fewer consecutive days) without first obtaining an official registration number from the

2  Los Angeles Department of City Planning (Department)."

3  **D.      Defendants' Failure to Cease Violation of the Home-Sharing Ordinance**

4          27.     Notwithstanding the First Warning Letter, the Finemans and DOE 1 did not register with

5  the City of Los Angeles.  Nor would they have been eligible to register for Home-Sharing because, as

6  noted, the Fineman Property was not anyone's Principal Residence.  The Ordinance requires an

7  applicant to "register for Home-Sharing" by filing an "application with the Department of City

8  Planning."  LAMC § 12.22A32(c).  The application "shall include," among other things, "information

9  needed to verify the Host's identification and Primary Residence."  LAMC § 12.22A32(c)(1).  To be

10 eligible for Home-Sharing registration, the proposed Home-Sharing is limited to the Host's Primary

11 Residence, as stated in the portions of the Ordinance quoted below:

12          Eligibility Requirements. The following requirements must be met at the time of submitting an

13          application for Home-Sharing registration:

14          . . .

15          (ii)  The proposed Home-Sharing is consistent with the provisions of this subdivision and is

16          limited to the Host's Primary Residence.

17 LAMC § 12.22A32(c)(2)(ii).

18          28.     Thus, notwithstanding the First Warning Letter, the Finemans and DOE 1 continued to

19 engage in illegal Short-Term Rental activity, including on the night and early morning of the incident on

20 January 28, 2023, and the Fineman Property was not even eligible to participate in Short-Term Rentals

21 on that date, given the home was not anyone's Primary Residence.

22 **E.      The City's Citation of the Finemans for Home-Sharing Ordinance Violations**

23          29.     Given the Finemans' continued violation of the Ordinance after receiving the First

24 Warning Letter, unsurprisingly on March 9, 2023, the City of Los Angeles issued a Citation for

25 Violation of Home-Sharing Ordinance to the Finemans, citing the Finemans for 10 separate violations of

26 the Ordinance, specifically for violation of LAMC Section 12.22A32(d)(2).  On March 17, 2023, the

27 City of Los Angeles issued an "Official Notice of Administrative Violation and Fine Due" to the

28 Finemans, with an amount due of $5,275.60 in fines ($527.56 for each of the 10 violations).  On March

COHEN WILLIAMS LLP

28, 2023, the City of Los Angeles issued another "Official Notice of Administrative Violation and Fine Due" to the Finemans, with an amount due of $5,275.60 in fines ($527.56 for each of the 10 violations). According to the Los Angeles Planning Department, the citations were not contested and the fines were paid in full.

### FIRST CAUSE OF ACTION

**(Against all Defendants for Negligence Per Se)**

30.     Plaintiffs incorporate by reference as if fully set forth here the allegations of Paragraphs 1 through 29.

31.     Defendants are liable to the Chens under the doctrine of per se negligence because at the time of the shooting and murders Defendants had been leasing the Fineman Property for short-term rentals in violation of Los Angeles County's Home-Sharing Ordinance (Ordinance No. 185931).

32.     The violation of the Home-Sharing Ordinance proximately caused injury to the Chens personally and to their property.  To date, the Chens have suffered damages in the form of property damage, cost of installing security measures, loss in value of their home, medical expenses, emotional distress, and other damages.

33.     Had Defendants refrained from unlawfully leasing the Fineman Property to short-term tenants, the Chens and their home would not have been damaged.

34.     The Chens' injuries resulted from an occurrence the nature of which the Home-Sharing Ordinance was designed to prevent.  The Ordinance – and the specific requirement of the Ordinance that Defendants violated (*i.e.*, that short-term rentals only be permitted in primary residences) – could not be clearer that it was designed to prevent exactly the kinds of negative impacts that occurred at the Fineman Property both before and on January 28, 2023.  This purpose of the primary residence requirement is expressly stated right up front at the beginning of the Ordinance – to avoid the unfavorable consequences of short-term rentals, including negative impacts on the residential character of surrounding neighborhoods and increased nuisance activity:

WHEREAS, short-term rentals in property other than a primary residence create unfavorable consequences, ***including negative impacts on the residential character of surrounding neighborhoods and increased nuisance activity***

1   (Emphasis added.)

2       35.     The Home-Sharing Ordinance reiterates this "purpose" in the following clause, which

3   was incorporated as Subdivision 32 of Section 12.22 A of the Los Angeles Municipal Code:

4          Purpose. The purpose of this subdivision is to allow for the efficient use and sharing of a

5          residential structure which is a Host's Primary Residence, ***without detracting from the***

6          ***surrounding residential character or the City's available housing stock***.

7   (Emphasis added.)

8       36.     Thus, the City of Los Angeles was aware that short-term rentals have negative impacts on

9   the residential character of surrounding neighborhoods and increase nuisance activity, and that these

10   unfavorable consequences could be avoided if short-term rentals are limited only to primary residences,

11   such that the host continues to reside in the neighborhood for no less than 6 months out of the year.

12   Accordingly, the Ordinance permits short-terms rentals only of a primary residence, and since the

13   Fineman Property is not a primary residence, there should not have been any short-term rentals on the

14   premises.

15       37.     The Chens are squarely within the class of persons for whose protection the Home-

16   Sharing Ordinance was adopted.  The Chens are immediate neighbors.  They are precisely the people the

17   Ordinance was designed to protect.  They are the ones who would most proximately suffer – and in this

18   situation have indeed suffered – from the negative impacts of short-term rentals on the residential

19   character of the neighborhood and increased nuisance activity.

20   **SECOND CAUSE OF ACTION**

21   **(Against all Defendants for Negligence)**

22       38.     Plaintiffs incorporate by reference as if fully set forth here the allegations of Paragraphs 1

23   through 37.

24       39.     The Finemans and DOE 1 owed Plaintiffs a duty to use care in the use, management, and

25   maintenance of the Fineman Property; they also owed a duty because of the special relationship between

26   neighbors of adjoining properties.

27       40.     Finemans and DOE 1 were on notice of multiple problems and risks associated with the

28   short-term rental of the Fineman Property prior to January 28, 2023.  What happened in the early

1   morning hours on that date was foreseeable and could have been prevented had defendants not been

2   negligent in their use, management, and maintenance of the Fineman Property.

3        41.    The Finemans and DOE 1 were negligent and breached the duties they owed to Plaintiffs.

4        42.    Plaintiffs were harmed.

5        43.    The Finemans' and DOE 1's negligence was a substantial factor in causing Plaintiffs'

6   harm.

7                            **THIRD CAUSE OF ACTION**

8                   **(Against all Defendants for Private Nuisance)**

9        44.    Plaintiffs incorporate by reference as if fully set forth here the allegations of Paragraphs 1

10  through 43.

11        45.    Plaintiffs suffered harm because the Finemans and DOE 1 created a private nuisance.

12        46.    Plaintiffs owned the property next door to the Fineman Property.

13        47.    The Finemans and DOE 1, by acting or failing to act, created a condition or permitted a

14  condition to exist that was harmful to health, indecent or offensive to the senses, and/or was an

15  obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or

16  property.

17        48.    The Finemans' and DOE 1's conduct in acting or failing to act was intentional and

18  unreasonable, or unintentional, but negligent or reckless.

19        49.    The condition caused by Finemans' and DOE 1's conduct in acting or failing to act

20  substantially interfered with Plaintiffs' use or enjoyment of their land.

21        50.    An ordinary person would reasonably be annoyed or disturbed by the Finemans' and

22  DOE 1's conduct.

23        51.    Plaintiffs did not consent to the Finemans' and DOE 1's conduct.

24        52.    Plaintiffs were harmed.

25        53.    The Finemans' and DOE 1's conduct was a substantial factor in causing Plaintiffs' harm.

26        54.    The seriousness of the harm outweighs the public benefit of the Finemans' and DOE 1's

27  conduct.

28

COHEN WILLIAMS LLP

## FOURTH CAUSE OF ACTION

### (Against all Defendants for Public Nuisance)

55.     Plaintiffs incorporate by reference as if fully set forth here the allegations of Paragraphs 1 through 54.

56.     Plaintiffs claim that they suffered harm because the Finemans and DOE 1 created a public nuisance.

57.     The Finemans and DOE 1, by acting or failing to act, created a condition or permitted a condition to exist that was harmful to health, was indecent or offensive to the senses, and/or was an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property.

58.     The condition caused by Finemans' and DOE 1's conduct in acting or failing to act affected a substantial number of people at the same time, specifically the many neighbors residing in and around the cul-de-sac where the Fineman Property is located.

59.     An ordinary person would be reasonably annoyed or disturbed by the condition caused by Finemans' and DOE 1's conduct.

60.     The seriousness of the harm outweighs the social utility of the Finemans' and DOE 1's conduct.

61.     Plaintiffs did not consent to the Finemans' and DOE 1's conduct.

62.     Plaintiffs suffered harm that was different from the type of harm suffered by the general public because Plaintiffs were next-door neighbors with the Fineman Property and were directly impacted by the disturbances at the Fineman Property, including in particular in the early morning of January 28, 2023, when, among other things, bullets hit their house, a bullet flew through one of their windows, and people were pounding on their door fleeing the scene.

63.     The Finemans' and DOE 1's conduct was a substantial factor in causing Plaintiffs' harm.

### PRAYER FOR RELIEF

Plaintiffs pray for judgment against all defendants, jointly and severally, on each cause of action alleged in this Complaint, as follows:

1.  For damages based on property damage, cost of installing security measures, loss in value of Plaintiffs' home, medical expenses, emotional distress, and lost earnings, in amount to be determined at trial;

2.  For other general and special damages, in amount to be determined at trial;

3.  For punitive damages;

4.  For interest thereon at the legal rate;

5.  For costs of suit;

6.  For attorneys' fees and costs, as permitted by law; and

7.  For such other and further relief that the Court deems proper.

Dated:  September 5, 2023                    **COHEN WILLIAMS LLP**


By: _____
    Marc S. Williams
    Attorneys for Plaintiffs Leon Chen and Sarah Chen